**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**OSWEGO LABORERS' LOCAL 212 PENSION AND
ANNUITY FUNDS,** *by Earl N. Hall and William
F. Shannon***, as Trustees; CENTRAL NEW YORK
LABORERS' HEALTH AND WELFARE AND
TRAINING FUNDS,** *by Janet M. Moro, as Fund
Administrator***; and CONSTRUCTION AND GENERAL
LABORERS' LOCAL UNION NO. 633,** *by Gabriel
Rosetti, as Business Manager,*

|  |  |
|---|---|
| **Plaintiffs,** | **5:08-CV-0484** |
| **vs.** | **(NAM/GHL)** |

**WESTERN NEW YORK CONTRACTORS, INC.** and
**ROBERT A. VALERINO,** *Individually and as an
Officer of Western New York Contractors, Inc.,*

**Defendants.**
_____

| APPEARANCES | OF COUNSEL: |
|---|---|
| Blitman & King, LLP | Jennifer A. Clark, Esq. |
| Franklin Center, Suite 300 | |
| 443 North Franklin Street | |
| Syracuse, New York 13204 | |
| Attorney for Plaintiffs | |

**Norman A. Mordue, Chief U.S. District Judge**

**MEMORANDUM DECISION AND ORDER**

**INTRODUCTION**

Plaintiffs Oswego Laborers' Local 214 Pension and Annuity Funds, Central New York

Laborers' Health and Welfare Pension, Annuity and Training Funds and Construction and

General Laborers' Local Union No. 633 bring this action alleging that defendants Western New

York Contractors, Inc. and Robert A. Valerino, violated the Employment Retirement Income

Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and the Labor-Management Relations

Act of 1947, as amended, 29 U.S.C. § 185 (a) *et seq.*, by failing to timely remit fringe benefit

contributions and deductions.

On May 5, 2008, plaintiffs filed a complaint in this action.  On June 30, 2008, defendants filed an answer to the complaint.  On June 6, 2009, Western New York Contractors, Inc. filed for Chapter 11 Bankruptcy in the U.S. Bankruptcy Court for the Western District of New York which resulted in a stay of proceedings in this matter.  (Dkt. No. 22).  On July 22, 2009, plaintiffs filed a motion in Bankruptcy Court seeking an order modifying the bankruptcy stay so as to permit plaintiffs to obtain discovery from Western New York Contractors, Inc. and Robert A. Valerino necessary for the actions previously commenced in this court.  The motion was unopposed.  The Honorable John C. Ninfo issued an Order modifying the stay afforded by 11 U.S.C. § 362.  The Order provided, in pertinent part:

> ORDERED that the Funds and Unions be and hereby are authorized to obtain discovery from Western New York Contractors, Inc. and Robert A. Valerino, as President of Western New York Contractors, Inc., in connection with the actions now pending in the United States District Court for the Northern District of New York;
>
> ORDERED, that the stay afforded by 11 U.S.C. § 362 to the Debtor is not applicable to Robert A. Valerino, individually, and the Funds and Unions may proceed with their District Court action (Civil Action No. 08-CV-484) against Robert A. Valerino, individually.

*See* Clark Aff., Ex. D (*In Re: Western New York Contractors*, 09-21530, Dkt. No. 71-1 (Aug. 12, 2009) (Order)).

On October 27, 2009, plaintiffs moved for an entry of sanctions against Valerino based upon defendant's continuing failure to comply with the Court's Orders and plaintiffs' requests for discovery.  On October 28, 2009, United States Magistrate Judge Lowe issued an Order finding Valerino in contempt.  (Dkt. No. 40).  Judge Lowe further ordered Valerino's answer to be stricken from the record.  Judge Lowe authorized plaintiffs to proceed with entry of judgment by default against Valerino and precluded Valerino from submitting any evidence in opposition to

plaintiffs' motion for default judgment including evidence in opposition to plaintiffs' calculation of damages.  Judge Lowe further directed the Clerk to enter judgment in accordance with Rule 54 in favor of plaintiffs against Valerino in the amount of $3,729.63 for attorneys' fees and costs from November 3, 2008 until July 16, 2009.[1]

On December 8, 2009, plaintiffs moved (Dkt. No. 42) for default judgment against defendant Robert A. Valerino, individually, on the first, second, fourth, and fifth causes of action.[2]  Fed. R. Civ. P. 54(b) and 55(b)(2).  Plaintiffs seek damages in the amount of $70,710.92, which, when broken down, represents: $117.88 in fringe benefit contributions and deductions; $8,721.42 in interest; $39,103.25 in liquidated damages; $4,282.21 in audit fees and expenses; and $18,486.16 in attorneys' and paralegal fees and costs.

## DISCUSSION

### I.    Jurisdiction

The Court has subject matter jurisdiction as this action arises under the ERISA, codified at 29 U.S.C. §§ 1001 *et seq.*

### II.   Rule 54(b)

Although plaintiffs only seek judgment on four of the six causes of action, Rule 54(b) provides, in pertinent part, that "[w]hen more than one claim for relief is presented in an action . . . or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties . . . upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."  *See*

---

[1] The Order specifically allowed plaintiff, in connection with a motion for default judgment, to seek an additional award of attorneys fees and costs incurred in connection with the collection of defendants' delinquency.

[2] Plaintiffs have not moved for judgment on the third and sixth causes of action.  The third cause of action seeks an order requiring defendants to produce their records for plaintiffs' review and audit.  The sixth cause of action seeks a permanent injunction.

*Advanced Magnetics v. Bayfront Partners, Inc.*, 106 F.3d 11, 16 (2d Cir. 1997). There is "no just reason for delay . . . where a plaintiff might be prejudiced by a delay in recovering a monetary award." *Id.* (citing *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 11-12 (1980)). In this case, plaintiffs have shown that there is "no just reason for delay," since the corpus and income of plaintiffs' funds have been reduced.

**III.    Default Judgment**

"Under Rule 55(b) default judgment shall be entered if a defendant has failed to plead or otherwise defend an action." *Parise v. Riccelli Haulers, Inc.*, 672 F.Supp. 72, 74 (N.D.N.Y. 1987). Fed. R. Civ. P. 55(b)(2) and Local Rule 55.2 set forth the procedural prerequisites plaintiffs must meet before a motion for default motion may be granted. Plaintiffs must: (1) properly serve defendant with a summons and complaint (to which no response has been made); (2) obtain an entry of default; and (3) provide an affidavit setting forth the facts required by L.R. 55.2(a), including an affidavit of non-military service and evidence that defendant is neither an infant nor incompetent. *See* Fed. R. Civ. P. 55(b)(2); N.Y.N.D.L.R. 55.1 and 55.2.

As referenced above, plaintiffs filed and served a summons and complaint on May 5, 2008. Defendant served an answer that was subsequently stricken due to defendant's failure to comply with court orders. Plaintiffs were authorized to proceed with entry of judgment by default against Robert Valerino.[3] (Dkt. No. 40). On December 8, 2009, plaintiffs moved for default judgment and submitted the required affidavits pursuant to Fed. R. Civ. P. 55(b)(2). Therefore, plaintiffs have fulfilled the procedural prerequisites for default judgment. Accordingly, the Court

---

[3] The Court notes that Judge Lowe's Order did not specifically direct the Clerk to enter default in the action. Plaintiffs did, however, serve Valerino with the instant motion for default judgment as required by Fed. R. Civ. P. 55(b)(2)("If the party against whom judgment by default is sought has appeared in the action, the party . . . shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application."), thus, the Court finds that plaintiffs have satisfied the requirements of Rule 55(b)(2).

will address liability.

**IV.    Liability**

"A party's default is deemed to constitute a concession of all well-pleaded allegations of liability." *Resolution Trust Corp. v. Forney*, 1993 WL 261415, *1 (W.D.N.Y. 1993) (citing *Greyhound Exhibitgroup v. E.L.U.L. Realty*, 973 F.2d 155, 158 (2d Cir. 1992)).  The allegations in plaintiffs' complaint and supporting papers, as summarized below, are therefore presumed accurate.

Pursuant to 29 U.S.C. § 1145, "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

Here, plaintiffs assert that defendant Valerino failed to comply with the terms of the Funds and incurred liability for delinquent contributions and liquidated damages.  Plaintiffs further assert that pursuant to 29 U.S.C. § 1132(g)(2), plaintiffs shall be awarded interest on the unpaid contributions, the greater of liquidated damages or an additional interest award, audit fees, reasonable attorneys' fees and costs.  By failing to comply with this court's prior orders, defendant's answer was stricken and he was prohibited from opposing the within motion.[4] Defendant has effectively conceded that he is bound by the terms of the participation agreement with plaintiffs or their representatives, and is liable for the entire amount as assessed by plaintiffs, as well as interest, liquidated damages, audit costs, and attorneys' fees and costs.  Plaintiffs have established that unpaid contributions are plan assets, and Valerino, who had managerial discretion and control over Western New York Contractors, Inc., commingled, or permitted commingling of

---

[4] The Court notes that while Judge Lowe expressly precluded defendant from opposing plaintiffs' motion for default judgment, plaintiffs served a copy of the motion upon defendant and defendant has failed to respond.

the assets, used assets to pay other creditors instead of paying the plans and diverted the assets for purposes other than purposes of the Funds.  Defendant Valerino may therefore be held personally liable under ERISA.

## V.    Damages

Where a violation of 29 U.S.C. § 1145 has occurred, ERISA authorizes plaintiffs to enforce an employer's obligations to remit contributions in accordance with the terms of the Agreement, Agreement and Declarations of Trust, and Collections Policy, and collect delinquent contributions and deductions, interest, liquidated damages, and audit fees.  *See* 29 U.S.C. § 1132(g)(2)(A-D).[5]  However, "[e]ven when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).  The Court "must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Id*.

### A.    Damages Derived from Failure to Pay Contributions

Plaintiffs allege that defendant currently owes $117.88 in unpaid delinquent employee benefit contributions, $39,103.25 in liquidated damages and $8,721.42 in interest.  With respect

---

[5] In relevant part, 29 U.S.C. § 1132(g)(2) provides:

In any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 [29 USCS § 1145] in which a judgment in favor of the plan is awarded, the court shall award the plan–
    (A)    the unpaid contributions,
    (B)    interest on the unpaid contributions,
    (C)    an amount equal to the greater of–
        (i)    interest on the unpaid contributions, or
        (ii)    liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
    (D)    reasonable attorney's fees and costs of the action, to be paid by the defendant, and
    (E)    such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

6

to the amount of damages, plaintiffs rely on the complaint, documentary evidence, and affidavits of Janet M. Moro (Fund Administrator of the Central New York Health and Welfare, Annuity and Training Funds), Gabriel M. Rosetti, Jr. (business manager for Laborers' International Union of North America, Local Union No. 633), Cynthia Castaldo (Fund Administrator of the Oswego Laborers' Local 214 Pension Fund), Linda L. DeMacy (paralegal), and Jennifer A. Clark, Esq.  In view of the affidavits and documentary evidence submitted by plaintiffs, a hearing to ascertain the damages in this case is unnecessary.  Among the documentary evidence provided by plaintiffs are calculations of damages at the foregoing rates of interest and liquidated damages.

Section 1132(g)(2)(A) refers to "unpaid contributions".  Plaintiffs claim that defendant owes $117.88 in fringe benefit contributions and deductions.[6]  Based upon the submissions, plaintiffs are entitled to recover the amount of $117.88 in unpaid delinquent employee benefit contributions owing under the relevant Agreement in this action. 29 U.S.C. §§ 185 and 1132(g)(2)(A); *see also Lanzafame v. Diamond Exterior Restoration Corp.*, 2006 WL 2265054, at *3-4 (E.D.N.Y. 2006).

Plaintiffs are also entitled to interest on unpaid contributions.  29 U.S.C. § 1132(g)(2)(B). The rate of interest to be applied to such an award is governed by the relevant Agreements.  *See id.*  According to Mr. Rosetti, interest on the unpaid and untimely paid Central New York Laborers' Funds contributions is calculated at a rate of one and a half (1 ½ ) percent per month. Furthermore, interest on the unpaid and untimely paid Laborers' Employers Cooperation and Education Trust ("LECET") and Health and Safety ("H&S") Fund contributions is calculated at a rate of one and a half (1½) percent per month and interest on the unpaid and untimely paid Union

---

[6] This total is comprised of $45.60 to the Pension Fund; $37.60 to the Health and Welfare Fund; $16.00 to the Annuity Fund; $4.80 to the Training Fund; $1.60 to New York State Laborers' Employers Cooperation and Education Trust Fund ("LECET") and Health & Safety Fund; $.40 in Political Action Committee monies; and $11.88 in dues deductions to the Union.  *See* Clark Aff. at ¶ 16; *See* Rosetti Aff. at ¶ 22-25.

deductions, Political Action Committee ("PAC") and Industry Advancement Program ("IAP") monies is calculated at the rate of nine (9) percent per annum. *See* Rosetti Aff. at ¶ 17.  Plaintiffs seek interest in the sum of $8,721.42, which comports with the Agreement.[7]

Plaintiffs are entitled to liquidated damages equal to the greater of:  (1) the interest on the unpaid contributions; or (2) the liquidated damages provided for under the collective bargaining agreement in an amount that does not exceed twenty percent of the unpaid contributions.  *See* 29 U.S.C. § 1132(g)(2)(C).  Pursuant to the Agreement, plaintiffs seek recovery for liquidated damages applying 10% to the delinquent amount.  Accordingly, plaintiffs are entitled to $39,103.25 in liquidated damages.[8]

**B.**     **Audit Costs**

Plaintiffs also seek $4,282.21 in audit fees. Requests for audit costs are generally determined by utilizing the same standards the court applies in awarding attorneys' fees . . . [and thus] must include, at minimum, some breakdown of the auditors' rates charged and hours expended."  *Trustees of Plumbers Local Union No. 1 Welfare Fund v. William J. Kennedy Plumbing, Inc.*, 2010 WL 1265197, at *3 (E.D.N.Y. 2010).  In support of this request, Joseph W. McCarthy, an independent auditor, provided an affidavit stating that his fees for the work performed in connection with the audits were $4,282.21.  In addition, McCarthy provided copies of audit bills and audit reports.  Accordingly, the Court accepts plaintiffs' claim to recover audit fees.

**C.**     **Attorneys' Fees and Costs**

---

[7] This total is comprised of $6,681.01 in interest to the Central New York Laborers' Funds; $1,053.63 in interest to Local 214 Pension Fund; and $986.78 in interest to the Union.

[8] This total is comprised of $16,899.13 in liquidated damages to the Central New York Laborers' Funds; $18,729.20 in liquidated damages to Local 214 Pension Fund; and $3,474.92 in liquidated damages to the Union. *See* Rosetti Aff. at ¶ 22-25.

Plaintiffs are statutorily entitled to recover reasonable attorneys' fees and costs associated with their efforts to collect the delinquent contributions and deductions.  29 U.S.C. § 1132(g)(2)(D).  Plaintiffs request $16,522.35 in attorneys' and paralegal fees and $1,963.81 in costs.  Plaintiffs submit detailed time records which the Court has reviewed and finds reasonable. They demonstrate that 53.55 attorney hours and 26.40 paralegal hours were spent on this matter.

Plaintiffs request reimbursement of attorney hours at $235 per hour and paralegal hours at $128 per hour for work performed in 2008 and reimbursement of attorney hours at $247 per hour and paralegal hours at $134 per hour for work performed in 2009.  With respect to hourly fees, the Second Circuit has recently held that courts are to award the presumptively reasonable fee, that is, the fee that would be paid by a reasonable, paying client in the relevant community.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 191-93 (2d Cir. 2008).  The Court notes that plaintiffs' counsel Jennifer A. Clark, Esq. has extensive experience and expertise in this field of litigation.  Due to the nature of the claims, a substantial amount of expertise, time, and labor is required to pursue the claims successfully, even though in some cases recoveries may be relatively small.  Here, counsel has succeeded in obtaining judgment recovering liquidated damages as well as an order compelling defendants to produce their records for an audit.  The importance of this case lies not only in recovering benefits for the affected employees, but also in conveying the message to employers and workers that the ERISA requirements will be enforced.  The Court is aware of attorneys' fee awards in similar cases in this community; it has recently been determined that the prevailing rate in this community in a similar case by the same attorneys is $210 per hour for experienced attorneys, $150 per hour for associates with more than four years experience, and $80 per hour for paralegals.  *See Eng'rs Joint Welfare, Pension, Supp. Unempl. Benefit & Training Funds v. Reape* ("*Reape*"), 2008 WL

2385908, *4 (N.D.N.Y. 2008).  In light of these factors and the Court's own knowledge of the rates prevailing in the legal community, the Court finds that the rate in *Reape* is the reasonable fee in the case at bar.  Plaintiffs have not submitted evidence warranting a different result.

Plaintiffs also seek reimbursement for costs in the amount of $1,963.81.  ERISA authorizes the award of costs of an action in conjunction with attorneys' fees.  *See* 29 U.S.C. § 1132(g)(2)(D).  The Court finds these costs reasonable.

Accordingly, the award of attorneys' fees and costs is $11,245.50 (53.55 x $210) for Attorney Clark's services, plus $2,112.00 (26.4 x $80) for paralegals' services plus $1,963.81 in costs for a total of $15,321.31 in attorneys' fees and costs.

## CONCLUSION

It is therefore

**ORDERED** that plaintiffs' motion (Dkt. No. 42) is granted; and it is further

**ORDERED** that plaintiffs are awarded default judgment on the first, second, fourth, and fifth causes of action against defendant Robert A. Valerino for the sum of $67,546.07, representing $47,942.55 in damages; $4,282.21 in audit fees; plus $15,321.31 in attorneys' fees and costs, together with interest thereon, at the rate provided for by 28 U.S.C. § 1961(a).

**IT IS SO ORDERED.**

Date:  July 19, 2010

Norman A. Mordue
Chief United States District Court Judge